## JOHN W. HALL *vs.* GEORGE A. PRIEST.

An estate in fee, limited by will, after an estate tail, is a remainder and not an execu tory devise.

A devise of real estate to one and his heirs, and, in case of his dying without issue then to another, creates an estate tail in the first devisee, with remainder over to the second.

A testator directed the residue of his estate, real and personal, to be divided into nine equal shares, and gave eight of his children " one of the said shares each, to have and to hold the same to their own use and behoof forever, and that of their several and respective heirs and assigns forever; it being my express will and intention, in case of the decease of either of my said children without issue, the share of such deceased child or children shall be equally divided to and among his or her surviving brothers and sisters;" and gave the other ninth to a trustee for the use of his remaining child for life, " and, in case of his decease without issue, to divide and distribute the said share equally among my other children, as provided in the last item, but, in case my said son die leaving issue, then to divide and distribute said share to and among said issue." *Held*, that each of the eight children first named took an estate tail in the real estate, with cross remainders over to the other brothers and sisters.

BIGELOW, J. The object of the present action is to recover the purchase money stipulated to be paid by a written contract, by which the plaintiff agreed to convey jointly with his wife in fee simple, and the defendant agreed to purchase, an undivided interest in a house and land in Winter Street in Boston, belonging to the plaintiff's wife. The defendant admits that the plaintiff has tendered to him deeds of such undivided portion, according to the contract, and sufficient in form to convey the same in fee simple. But he denies that the plaintiff and his wife did by these deeds, or that they can by any deeds which they can legally execute, convey a perfect title in fee simple to the premises, which, by the contract declared on, the plaintiff agreed to convey to him. The decision of the case must therefore depend on the nature and extent of the title of the plaintiff and his wife in the estate which is the subject of the contract. If they are seised of it, so that they can by their deeds vest in the defendant a title thereto in fee simple, he is liable in this suit. If they are not so seised, then the plaintiff cannot perform the contract on his part, and cannot maintain this action against the defendant.

The title of Mrs. Hall to the premises in question is derived from her father, John L. Priest, under the fifth, being the residuary clause of his last will. By this clause, having in a previous part of the instrument devised to his wife the use and improvement of the real estate in Winter Street during her life, or so long as she shall remain his widow, and having made various bequests of personal estate, he directs that the rest and residue of his estate, both real and personal, " including the reversion of my said dwelling-house in Boston," shall be divided into nine equal shares, and gives and bequeathes to eight of his children " one of the said shares each, to have and to hold the same to their own use and behoof forever, and that of their several and respective heirs and assigns forever; it being my express will and intention, in case of the decease of either of my said children without issue, the share of such deceased child or children shall be equally divided to and among his or her surviving brothers and sisters." He then, by the sixth clause of his will, proceeds to give the other share or ninth of his estate in trust for the use of his remaining child, Charles Henry Priest, 'or life, " and, in case of the decease of my said son last aforesaid without issue, to divide and distribute the capital sum of said share, and the interest and income, if any remain unexpended, equally among my other children, as provided in the last item; but in case my said son Charles Henry decease leaving issue, then to divide and distribute said share to and among said issue, in the same way the laws of the Commonwealth for the time being would divide and distribute the same."

The question which arises on the construction of this devise is obvious. If by the words, " decease without issue," the testator intended a definite failure of issue, that is, a failure of issue on the death of the first devisee, then the gift over was an executory devise. In such case, the plaintiff and wife could not convey a good title to their share of the estate, because it is of the essence of an executory devise that it cannot be barred or cut off by any mode of alienation whatever. If however the words import an indefinite failure of issue, that is, a failure of issue of the body of the first devisee at any time after his death

then by the rules of law the plaintiff and wife were capable of conveying a good title to the estate to the defendant, according to the contract.

The rules of law applicable to devises of this nature, although exceedingly nice and technical, are nevertheless well settled and familiar. The first is, that whenever a future interest in real estate is so devised, that in conformity with the rules of law it can take effect as a remainder, it shall be construed to be a remainder and not an executory devise. Executory devises are not favored in law, and were originally created and upheld only for the purpose of carrying out the intention of testators, so that devises should not fail of effect, which, consistently with the rules of law, could not take effect as remainders. *Purefoy* v. *Rogers*, 2 Saund. 388. *Doe* v. *Morgan*, 3 T. R. 765. 4 Kent Com. (6th ed.) 263. *Nightingale* v. *Burrell*, 15 Pick. 110. Therefore it is an established rule, that when an estate is limited to take effect after an estate tail, the future or contingent interest, so limited, constitutes an estate in remainder, and does not take effect as an executory devise. The estate tail, being a particular estate carved out of the fee, leaves the residue to take effect, after the determination of the particular estate, as a remainder.

Another rule applicable to devises of real estate is well settled, and has often been recognized as the law of this commonwealth. A devise of real estate to one and his heirs, and if he die without issue, then to another, creates an estate tail in the first devisee, with a remainder over on the happening of the prescribed contingency. The words, " dying without issue," unless explained or qualified by other expressions, have acquired a distinct and well understood meaning, by a uniform series of decisions both in this country and in England. They are held to mean an indefinite failure of issue after the death of the first devisee. This rule of construction is founded on the presumed intent of the testator to include the issue of the first devisee as the objects of his bounty. This purpose is best secured by vesting an estate tail in the first devisee, so that his issue, upon his death, will take in succession, until the issue shall fail, when

the remainder will take effect in possession. It results from this rule of law, that if an estate is devised to A. and his heirs, which would create a fee simple, and it is afterwards provided, either in the same clause, or by other parts of the will, that if A. die without issue, then the estate is to go to B., this cuts down the estate of A. to an estate tail by implication. The generality of the word "heirs" is restrained, by the subsequent proviso or contingency of dying without issue, to the issue of the first devisee. So that in such case A. would take an estate tail, with a remainder to B. on the determination of the first estate. The law implies, from the use of the word "heirs" in the first clause, in connection with the subsequent contingency of dying without issue, that it was meant to designate "heirs of the body," and that it was the intent of the testator to give the estate to the issue of the first devisee, and not to give it over until that issue failed. 4 Kent Com. 276, 279. *Anderson* v. *Jackson,* 16 Johns. 382. *Ide* v. *Ide,* 5 Mass. 500. *Hawley* v. *Northampton,* 8 Mass. 41. *Nightingale* v. *Burrell,* 15 Pick. 104. *Parker* v. *Parker,* 5 Met. 134. 2 Saund. 388, *note.*

Applying these well settled rules to the residuary clause in Priest's will, the result is free from all difficulty. The devise is to his eight children and their respective heirs one share each of his estate. These words, standing by themselves, would create a fee; but it is then provided, that if either of his children shall die without issue, then the share of such deceased child shall be divided among his or her surviving brothers and sisters. This proviso cuts down the fee, and clearly creates an estate tail in each of his eight children in one ninth of his real estate, with cross remainders over in fee to the brothers and sisters, on the determination of the estate tail by the happening of the contingency of a failure of issue after the death of the first devisees.

It was urged in argument, that although such would be the result if the devise in question comprehended only real estate, it could not apply in the present case without defeating the plain intent of the testator as to the personal estate, because the residuary clause included personal as well as real estate

and that, as there could be no estate tail created in persona. property, the intent of the testator to give it over would fail, and it would vest absolutely in the first devisees. It does not necessarily follow that the same words are to have the same construction when applied to personal as to real estate. Authorities are very numerous and weighty to sustain the position, that the same words shall have different constructions, according to the nature of the property to which they are applied, for the purpose of supporting the manifest general intent of the testator, when the particular intent is contrary to law. It has been often held, following the distinction laid down in *Forth v. Chapman,* 1 P. W. 663, that two different limitations might be intended by the same words; that, as to the realty, the testator might have intended an indefinite, and, as to the personalty, a definite failure of issue. See *Hawley* v. *Northampton,* 8 Mas ι. 38. But without entering into this vexed question, upon which there is a very great and irreconcilable conflict of opinion iא the judicial decisions, it is sufficient to say, that in a case like the present, where personal and real estate are given by the same clause, and in the same words, and there is nothing to indicate a different intent on the part of the testator, in relation to his personal estate, from that manifested respecting his real estate, we are of opinion that the words are to be construed in ;- the same manner, as applicable to both species of property. It is undoubtedly true that the same words which, applied to real estate, will create an estate tail, when applied to personal property, will give an absolute interest; and that the personal estate in the present case, by force of this rule, will vest absolutely in the children, and thus defeat the bequest over in the prescribed contingency; or, what leads to the same result, the limitation over, being on an indefinite failure of issue, is too remote, when applied to personal estate, because it cannot be construed to create an estate tail therein, and is therefore void.

To this extent, the intent of the testator is necessarily defeated; because he has used words which, by their legal import and signification, will not permit that intention to be carried out. This result unavoidably flows from the use of technical words, which

must have the effect which has been given to them by well settled usage, sanctioned by a long and uniform series of judicial decisions. In the language of Chief Justice Parsons: "The importance of adhering to a course of decisions, in the construction of wills, is manifest; for their authority has established a rule of property on which many estates depend, and to overturn them would introduce perplexing uncertainty, and might shake many titles resting on the faith of them." 8 Mass. 39. It is therefore better that the intent of a testator should fail in a single instance, than that the rules of law should be violated or strained in order to meet the exigency of a particular case.

It was also insisted by the counsel for the defendant, that in order to interpret the words "without issue" in the fifth or residuary clause of the will, resort should be had to the sixth item, in which the testator disposes of the remaining ninth of his estate in trust for the use of his son Charles Henry Priest. The argument is, that in disposing of this ninth the testator directs that, in case said son shall leave issue, his share shall "then" be divided among said issue, and that by this expression he clearl referred to a definite failure of issue, that is, to the contingency of dying, without issue living at the death of the party, and not to an indefinite failure of issue after the death of the first devisee. If this be so, it is then urged that it cannot be reasonably supposed that the testator intended to make a different disposition of this share of his estate, in case of the death of his son, from that which he had already made of the other shares, in the same contingency, by the previous clause of his will.

This argument rests entirely upon the force and effect to be given to the word "then," in the connection in which it stands; and it seems to us that it would be giving too much stress and importance to it, to hold that it changed the meaning of the previous language of the will. In the first place, the language used in this clause, in disposing of the share in the event of this son dying without issue, is the same as that used in the previous clause, in respect to the other eight ninths of his estate. It is only when providing for the contingency of his son leaving issue, that the word is used.

But in the next place, the word " then," although in a strictly grammatical sense an adverb of time, is nevertheless often used for the purpose of denoting an event or contingency, and is equivalent to the words, " in that event," or " in that case." Such is often its popular signification, and in this sense it is frequently used in legal instruments, to designate limitations of estates, or future contingencies on which they are made to depend. When thus employed, it becomes a word of reference, and does not indicate any particular point of time. *Beauclerk* v. *Dormer,* 2 Atk. 308. *Campbell* v. *Harding,* 2 Russ. & Myl. 390. In this sense, to point out a contingency or event, and not to mark a precise time, we think it was used by the testator in the sixth clause of his will. It cannot therefore affect the construction to be given to the well settled meaning of the words used in the previous devise.

A question still remains to be determined, arising from the facts stated in the agreement of the parties, that one of the sons of the testator, William E. Priest, to whom one ninth of the estate was given by the residuary clause of the will, died on the nineteenth day of July 1854, leaving issue, an only daughter, who died on the thirty-first day of July following. By the construction already given to this clause of the will, this son was tenant in tail of one ninth of the real estate. He could not therefore devise ·his interest by his last will and testament. Estates tail cannot be barred by will. They are expressly excepted by statute from the operation of a last will and testament. Rev. Sts. *c.* 62, § 1. On the death of William E. Priest, the one ninth, which had been vested in him as tenant in tail, descended to his daughter, who then became tenant in tail. Upon her death without issue, the contingency contemplated by the testator, of dying without issue, had arisen. The estate tail thereby came to an end by its natural determination ; the particular estate thus carved out of the fee was determined, and the remainder, which was limited to take effect in possession on the happening of that event, became vested in the surviving brothers and sisters in fee, one eighth of one ninth, or one seventy-second part in each.

The result is therefore that the plaintiff's wife was seised of one ninth of the estate in Winter Street under her father's will, as tenant in tail; that, after the expiration of the life estate vested in her mother by the will, she was capable of barring the entail, and conveying this one ninth in fee simple to the defendant, by a deed duly executed by herself and her husband, conformably to Rev. Sts. *c.* 59, §§ 2, 3; and that as to the ninth of the estate which was vested in the son William E. as tenant in tail, on his death the same descended to his daughter as tenant in tail, and upon her death without issue, one seventy-second part was vested in Mrs. Hall as a remainder in fee. By joining with her husband in a conveyance of this portion to the defendant, he would thereby take the same in fee simple.

*Judgment for the plaintiff.*

*F. O. Watts*, for the plaintiff.
*O. G. Peabody*, for the defendant.